Good morning, and may it please the Court. My name is Sarah Gannett, and I represent the appellant Robert Paladino in this matter. I would respectfully request three minutes for rebuttal. Thank you. The District Court erred in two ways in sentencing Mr. Paladino on his violation of supervised release. First, it failed to address him personally to offer him the opportunity to speak or present information in mitigation of the sentence in violation of Rule 32.1. And second, it applied an overbroad and vague condition of supervised release that has the effect of precluding Mr. Paladino from possessing or accessing writings of political, legal, and social import. With the Court's permission, I'd like to begin with the allocution issue. The government has conceded the failure to permit allocution. It has also conceded that the failure affects the fairness, integrity, and reputation of judicial proceedings. And thus, the only issue for this Court is whether that failure prejudiced Mr. Paladino. What's the prejudice? The prejudice is that under this Court's precedent, because the District Court retained discretion over his sentence, the prejudice is presumed because the allocution might have affected the District Court's sentencing decision. This is a little different because this is not the usual sentencing proceeding. This is a supervisory release revocation hearing. That's correct. So is there an absolute right to allocution in that circumstance? There is, and this Court held in plots that the same presumption that applies in a regular sentencing hearing, as the Court found in Adams, applies in a supervised release sentencing hearing. And so the standard is exactly the same. That applies even though no matter what a defendant says is not going to change the sentence one bit? Well, so we don't know whether what the defendant says is going to change the sentence one bit, and that's why the presumption applies. So the right... So tell me about your position on this point. In arguing prejudice, one of the points that the government, given the opportunity, would ask you is, well, you know, we agreed on what the sentence is, he got what we'd agreed on, what's the problem? So there was an agreement in this case, and I would make two points about that. The first is that the agreement did not cover all aspects of the sentence. So this Court has held that the supervised release term is an aspect of the sentence, and the conditions of supervised release are an aspect of the sentence, just as much as the term of incarceration is an aspect of the sentence. And the agreement between the parties certainly covered the term of imprisonment. It arguably covered the supervised release term, although the record is a little more murky about that. But it did not cover the conditions of supervised release. And we raised that in our briefing. The government does not address that point. So there was at least one aspect of the sentence that was not agreed to. But the second point is that the right to allocution is an old right that derives from the common law. And it's now codified. But it's a right that recognizes the unique eloquence, as the Supreme Court wrote in Green, and this Court echoed in Adams, of the defendant. And the fact that the defendant has something to offer in sentencing that's special, and something that may impact the judge in a special way, that cannot be determined. And that's why we presume prejudice, if there's any discretion at all that's retained by the decision. I would think that's right. And that's very well said. But that sounds like it would be when a judge has discretion. So that the defendant's statement can affect that discretion one way or the other. But that wasn't the case here, was it? Well, here there's discretion in several ways. There was discretion over the term of imprisonment, which is less relevant now to this Court's decision because Mr. Let's go back a second. There was an absolute agreement for eight months in custody. There was an agreement for eight months in custody, but that agreement is not binding on the district court. An agreement between the parties is never binding on the district court. All right. So despite the agreement, the defendant could have said, made a few comments, and the judge could have said, nice agreement, folks, but I'm not going to abide by it. I'm going to make it six months. Absolutely. And courts do that. I'm sure this Court doesn't see that very frequently because the defendant's not likely to appeal that decision, but that does happen in district court practice. And that's part of the reason that we presume prejudice in this type of circumstances. We can't know what the defendant might have said that might have influenced the district court. Would the proper response be not six months, but folks, I'm not going to abide by your agreement, and so you can take it back if you like, but not proceed to sentencing. Well, so that is what happens if there's a C plea. But there are two types of pleas. There's a B plea, and there's a C plea. And in a C plea, the condition is, and the defendant should be advised of this under either Rule 11 or under due process. In the supervised release context, it's a due process consideration more than a Rule 11 consideration. And that's under this Court's decision in Manuel and Supreme Court authority in Morrissey and other cases involving revocation hearings. But the defendant should be advised if it's a C plea that those are the consequences, exactly as you've said, Judge Fuentes. But in a B plea, it's simply that the judge considers what the parties have said, and then the judge can decide what the judge is going to do with regard to the sentence. So let's assume a B plea for a moment where the judge retains the discretion. And let's assume the sentence is 5 to 11, the possibility is 5 months to 11 months. And let's assume also for the moment that there are no conditions of supervised release that will be at issue. And the agreement's 5 months, and the judge gives 5 months, but no right to allocute. Do we have to remand under those circumstances? We do, and Plotts is directly on point in that regard. And the ruling by this Court in Plotts was that because in a supervised release context, there is no, that the guidelines are completely advisory, and that there's no minimum requirement, that even if a low-end guideline is given, there's still discretion on the part of the district court. And in fact, I believe in Plotts that it was a low-end sentence that was given in that case, and this Court remanded. I think this Court's non-precedential decision in Kearney, in which Judge Fuentes and Judge Nygaard both participated, is instructive here. And in that case, the Court decided that even though the defendant had a very terrible record, and that the sentence was unlikely to change on remand, that because the right to allocate was violated, that the presumption had to apply since there was some discretion, and that remand was necessary even though the Court acknowledged in the opinion the sentence was unlikely to change. If I could turn to the supervised release issue, unless the Court has further questions on allocution, the conditions of supervised release. Of course, it's an important issue here in this case. Other than when a defendant gets up and speaks, and even though there's an agreement for a specific term, the defendant addresses the Court, and addresses the Court generally in the hopes of getting a lighter sentence. Is there another rationale for this absolute right of allocation, other than trying to convince the Court to give me a lighter sentence? The rationale is that the defendant will offer information to the Court. It's generally information and mitigation, but that is the rationale. Is it a right of rule, or is it a right of due process? It's a right of rule, but it's a right of rule that derives from such longstanding tradition that this Court has recognized that it has a deeper value and a deeper importance than regular rules. And that's why this Court found in plots quoting Adams that it's not the sort of isolated or abstract error that we can determine doesn't affect fairness, integrity, or the public reputation of judicial proceedings. That's why we find that the fourth prong of plain error is met in these cases, and we just look at the prejudice prong. And that's why we find prejudice to be presumed, rather than doing this sort of speculative, fact-intensive inquiry in each case. We just look to whether the sentencing judge had any discretion at all. The judge here, Ms. Gowdy, did address the defendant, didn't he? The judge addressed the defendant only to ask, is that your understanding of the agreement? And the defendant answered, yes. So the defendant spoke literally one word at this hearing. It's not the defendant's responsibility or defense counsel to say, I have something else I'd like to say, or may I address the court? But rather, the judge has to say, would you like to address the court? Is that the way? It is not. In fact, this Court's cases are consistent in that point. In fact, there are even cases in which the Court has announced at the beginning that it would hear from the defense, and then forgot to hear from the defendant. And even in that case, the Court said, this Court said that the error was the Court's, and that remand would be required for allocution. Turning to the supervised release conditions, the condition here requires the Court to consider whether there was a reason to limit Mr. Palladino's access to all writings describing child pornography regardless of their political, legal, or social import. This Court does not appear to have considered the writings aspect of this condition, although it's considered a number of similar conditions. But the Court's prior cases suggest that the plain error standard should still be met here, because as this Court said in Volcker, after Loy, the need to balance the First Amendment concerns should have been apparent. Here, the issue is, was there anything in the record to suggest that Mr. Palladino needed to be limited from having access to all writings? And second, how do we tell from the condition what writings he's prohibited from accessing and what writings he's not prohibited from accessing? The condition is so vague and overbroad that remand is required to either provide more rationale on the part of the District Court for why such a broad condition is necessary or to tailor it more appropriately to meet the needs in this case. Is this a condition that he had previously agreed to? There was a modification of his conditions of release that was tendered to him while he was in prison, and he signed a written waiver of his right to counsel and his right to a hearing on that modification of conditions of release. And it's our position that the uncounseled, uncolloquied prison waiver of his right to a hearing on that modification is not knowing an intelligence. The modification was this particular? The modification was the same condition that was then re-imposed following the revocation, and it's the government's position that that modification should act as essentially the equivalent as a waiver of his right to appeal the re-imposition of that condition as a result of the revocation sentence in this case. How would you tailor the, you mentioned to send it back for possible tailoring, how would you tailor it? Well, I think there are several ways that the court could consider tailoring it that might be effective. Of course, any kind of tailoring would also have to come with findings by the district court about why the condition is appropriate in the first place, but it could be tailored to exclude writings. It could be tailored to exclude writings that have a serious literary, artistic, political, or scientific value. It could be tailored to cover only writings that are lewd, designed to appeal to a prurient interest, or have a purpose of sexual enticement. It could be tailored to exclude writings that are being used for legal treatment, employment, or research purposes. Some of those kinds of exclusions have been accepted by other courts, such as the Ninth Circuit and COAP. Your biggest problem is with the word writings? The problem is with the word writings, that's correct. The problem is not with the images. We concede that preventing him from accessing images is appropriate. Okay, Ms. Gaddy, thank you. We're going to get you back on rebuttal and hear the other side. Mr. Ivory? Good morning, Your Honor. My name is Michael Ivory. I'm an Assistant United States Attorney from Pittsburgh. I'd like to address the issue of the modification first, if that's amenable to the Court. First, Mr. Palladino has been, this condition has been in existence since 2007. It was part of the original judgment and commitment order entered by Judge Lancaster, and in 2012, it was modified. It was modified to include the language that a federal judge defendant shall not possess or access with intent to view. That was the modification, and there was also a modification to a reference to child pornography as defined in the child obscenity statute. So that's the modification we're talking about here. All it has done is really add with excess, the phrase access with intent to view, and that's to reflect the fact that the child pornography statute had changed after Mr. Palladino had been convicted. There are at least six reasons why this condition was imposed, and those appear clearly in the record. First of all, we have to look at the nature of the offense in this case. When Mr. Palladino received child pornography in 2007, he was obtaining child pornography in two different ways. First, he was physically receiving it from a commercial mailbox facility, and secondly, when we searched his computer and found the 5,000 or so images, he was also obtaining it via the computer. So he was obtaining child pornography in two different ways. Your adversary is focused on the word writings. Yes, Your Honor. And what is your problem with sending it back and requiring us to have the district court take a look with regard to the breadth of writings? Well, first of all, we're in a plain error posture here since Mr. Palladino never objected to the implementation. Well, I'll assume for a moment that plain error is met. I know you're telling me that you don't think it can be plain error, but I get that. Yes. I don't think it is necessary because I don't think that the concerns of overbreadth exist because of the statutory definitions that are included within the conditions itself. It provides guidance to Mr. Palladino as to what he can read and look at, what he cannot read, and what he cannot look at. He says he can be violated for having a copy of the New York Times or the Sunday Times, which is a lot fatter, that describes pornography. It's a writing describing pornography. If you take a hyper-technical copish view or approach to this, as the Ninth Circuit did in United States v. Cope, you have that problem. Did they use that phrase, hyper-Cope-ish? Hyper-Cope-ish. I have a way of inventing words sometimes. But again, as I indicated in my brief, this Court should follow United States v. Mike, the Tenth Circuit decision, which addressed an identical, if not more restrictive condition because in Mike, the defendant was prohibited from possessing or looking at a sexually explicit material. And here, Mr. Palladino is restricted from child pornography. There's a big difference between sexually explicit material because that encompasses adult pornography, which is protected by the First Amendment. Here, we're dealing with child pornography, which is not protected by the First Amendment. So I think... What about the cover of the Times Magazine on children being exploited overseas because of child pornography? Well, again, if we employ a common-sense approach, as this Court did in United States v. Loy, Loy 2, where the Court construed a condition, and Loy, the defendant, was ordered not to associate with children because he was a child pornographer. Well, he said, what happens if I have my own children? Or what happens if there's an incidental contact? Say I get on the bus and there are children on the bus. I'm technically in violation of this condition of supervised release. And this Court construed that condition to say, it doesn't apply to your own children. And if there's an accidental or an incidental association with children, that's not what the District Court meant in this case. I don't think that the District Court, in ratifying the condition to which Mr. Palladino consented, was prohibiting him from looking at Time Magazine or reviewing the Sunday Times, even if those articles... So what is it preventing me from? So I, not I, but he, can read magazines, newspapers, Internet articles, that part of the content could be on child pornography, as long as he doesn't read it, he's not in violation of the condition? It's prohibiting him from going out and actively looking for material writings involving child pornography in situations defined by the child pornography statute. I'm not sure, but I would guess that your adversary would jump up and say, your honors, let's adopt that modification. I can live with that. But that's not what Mr. Palladino signed on for, right? Right, right, right. And Mr. Palladino really didn't sign on for anything because he didn't object. And I would note in Loy that a defendant did object, and that this Court did not hesitate to apply a common-sense approach in construing the scope of the condition that was challenged by Mr. Palladino. And also, additionally in  who are involved in child pornography, that there can be bans, consistent bans against their First Amendment rights to possess this material, so long as they, there's sufficient guidance, and an example in this case, we do have guidance in that any discretion that the probation officer would have is informed necessarily by the definition of child pornography that's set forth in the condition as well as in the Federal Code. But Loy, too, is the real problem here, though, when it comes to child pornography, is having depictions, having images on a computer and looking at those pictures? Isn't that the real problem, and that's the problem that the sentencing guidelines are trying to address, as opposed to a writing about, well, child pornography? I don't have a good answer for that, and the reason why is I don't know how a writing of... Well, you don't prosecute people because they have a writing about child pornography. You prosecute them because they have images on a computer, or they have pictures all over the place involving child pornography. That's correct. You can prosecute people under Federal obscenity statutes for writing about child pornography. It's happened in the Western District of Pennsylvania. We also had the Extreme Associates case that this Court decided several years ago. And by the same token, would you violate, would a probation officer violate and the U.S. attorney assist in prosecuting someone who has a writing about child pornography? It's happened, yes, Your Honor. Why is that? How does that contribute to the rehabilitative ideal? Prosecuting individuals for distributing obscene material? No, no. A writing about child pornography. Oh, I'm sorry. The case I referred to, it was a distribution of obscene material, not possession. I got that. If we're dealing with a situation where it's part of a court-ordered treatment, I don't think that that's a problem because it's part of a court-ordered treatment. If Mr. Becker's original writing is graphically describing the sexual abuse of children and this would comport with the definition set forth in the child pornography statute, he should not be permitted to have something like that. And that would constitute, in my estimation, a violation of the conditions of supervised release. So you were mentioning Loy 2 before. Now, in Loy 2, if I'm looking at this correctly, Judge Becker ruled that a condition of supervised release prohibiting the defendant from possessing all forms of pornography, including legal adult pornography, was unconstitutionally vague. So, I'm sorry, what did you think the import of that was as it relates to this? Well, the other concern in Loy, and Judge Becker said that it was, first of all, it was dealing with adult pornography in Loy. But I believe it... Well, he was found guilty of receiving and possessing child pornography. That's correct. But the ban included adult pornography. I understand. Right. But I believe that there was a reference or a portion of the Loy decision that says there might be a different outcome in this case, or the situation may be different if the ban was, if the condition had a statutory reference, such as to the child pornography statute, so that the defendant would know, not know, would know what he could or could not look at. So that's where I was talking about how Loy 2 actually helps me in this case. Well, right, except isn't the point here that the condition as written, as described, isn't as specific as you're relating to us right now? Maybe if the description were as narrow as you've, was as narrow as you've just described, yes, but that's the point, right? It's much broader than that. Well, it necessarily has to be broad because terms of supervised release cannot cover every conceivable situation that could occur. I mean, you know, Mr. Palladino in his brief says, well, you know, this would prohibit me from looking at a scholarly work dealing with child pornography, and I point out in my brief, well, geez, this would also apply to family photo albums where there are photographs of young children being bathed by their parents. So there has to be necessarily, you just can't draft these things, these conditions, to account for every permutation that could possibly happen. Can I, can I, I'm sorry, I want to get you over to the allocution because your time is running. I'm sorry about that. Not at all. The attorneys put the agreement on the record, eight months going to jail, and the court says, Mr. Palladino, is that your understanding? That's correct. And he says yes, and that's, that's the end, appears to be the end of it. That's correct. He did not personally address the defendant as he was required to. He didn't have to. And let me tell you, let me explain why I made that proposition. First of all, when Judge Sircone came out on the bench, he already knew about the existence of the as to what the new sentencing would be. If Judge Sircone was not amenable to that condition, he would have rejected it as he has before, in cases. Well, wait a minute. What if he heard something from Palladino that persuaded him otherwise? But Judge Sircone, and we're talking, Judge Sircone was aware that that's I mean, that is the purpose of allocution. That is the purpose of allocution. I'm not sure if it's all that effective, but it certainly is the purpose of allocution. Well, you don't want it to be effective, but, you know, we don't go by percentages, do we? That's true. No, we do not. You win 95% of your cases. No kudos to you, right? I'm not going to answer that question. But when we're talking about the discretion in this case, and that's the one point that Mr. Palladino emphasizes, he says, I could have said anything. I could have been as grand eloquent as possible. Judge Sircone could have been so moved. Not only would he have not imposed the sentence of imprisonment, but geez, he would have removed that condition of the modification I agreed to a couple of months before. When Judge Sircone took the bench, not only did he know about the agreement, but afterwards he said, since I am going to be imposing a term of imprisonment in this case, he said, since I might, he did not say, since I might be imposing a term of imprisonment in this case. He said, since I'm going to be imposing a term of imprisonment in this case. You've got to really stop there, right? I mean, I was a district judge for a while. I know that. And you come into a sentencing hearing with X in your mind, right? And I nor any of my colleagues can say that we've never been persuaded by allocution. You seem as though you want us to adopt a test that's fact specific. If the judge knew what he was going to do, no right of allocution. There's every indication on this record that Judge Sircone was amenable to the agreement and was going to honor the party's joint sentencing agreement. That's what he did in this case. Again, there's no indication that he was opposed to this, that, you know, it's not a situation He wasn't given a chance to oppose. I'm a bigger person. He wasn't given a chance to oppose. Isn't that the purpose of addressing the court? Not only opposed, but I don't, you know, I'd like to talk the judge out of eight months back in jail and maybe make a statement that would persuade him that four months would be more reasonable. Well, first of all, Mr. Palladino would have been in violation of the agreement that he made in that case if he was asking for a lower sentence. I mean, he agreed to eight months. Well, he didn't have to ask for it. Look, if he had been given the opportunity to address the court, despite whatever negatives you might have with regard to his eloquence or his ability to persuade, it's a possibility because the district judge had discretion. Now, your adversary says, well, you know, even if he didn't have discretion, it would be important. Well, if he, there were no contested sentencing issues in this case. I mean, we're dealing with prejudice here. He can't show prejudice under the second prong of the Adams test. There was no opportunity for, there was no chance for the last opportunity to allecute to have played, not under the terms of the agreement. And the district court What is the district court bound is the agreement between you and Mr. Palladino, between the government and the district. Well, the district court was aware of the agreement by the time it took the bench. It's a probation. It's my probation. It's Judge Greenaway's probation. I impose the sentence. Do I not have a right to modify the terms of the sentence irrespective of an agreement? If you agree, if we look at this under the aegis of 11C1.1, no, you don't. And under Bernard, if you do deviate from an accepted guilty plea, that constitutes a breach of the plea agreement. Is it from the plea or from the sentence? Well, I'm talking about the agreement. Bernard was in 11C1.C where the district court did not, while accepting the plea agreement, did not honor the conditions. And this court said that that constituted a breach by the court. But you do agree the court is free to reject the agreement based on allocution? The court is free to reject the agreement without allocution? Well, allocation occurs after a guilty plea. So if the district court is already... Let's talk about this supervisory agreement. Okay. Okay. The court does not have to accept the agreement. It does not have to accept the agreement, but in this case it did. And it could have rejected the agreement on the basis of comments made by the defendant. Never got to that point, Your Honor. Okay. Thank you. Thank you. Ms. Gannett, I'd like to ask you a question about current status of Mr. Palladino. Yes. What happens if we were to return this case for failure to allow allocution? He's already served a sentence. He has served a sentence, but he's still serving his term of supervised release. And so that could be a... So that's all you would get out of this? Well, but it's significant. He's serving a 10-year term of supervised release with substantial conditions on it. And so his right to allocute with respect to the term of supervised release and the conditions is a significant component of his sentence. Okay. At least we narrowed the... If there is a remand, the basis. It does narrow the issues. But I would point out on that issue one final point, which is that the right of allocution is not conditioned on anything. It's not conditioned on whether there's an agreement in the case. It's not conditioned on whether the defendant is contesting anything about the sentence or anything about the violation. See, I thought there was a more fundamental basis than a rule basis for allocution. It's... It's not a constitutional right, but it does derive from longstanding tradition. It does derive from the common law, and it does derive from important recognition of the defendant's role in the proceeding. But I can't say that it derives from anything greater than that. This court, however, has recognized its tremendous importance to the proceeding, and that's why it's given in Adams and Platt such primary importance. And it's given the presumption, and it's given that in the plain error analysis, it's given that centrality to the integrity of the judicial process in prong four of the analysis. On the supervised release condition issue, I would make three points. The first is on the question of writings and whether it's appropriate to be limiting Mr. Palladino's access to writings. The district court never gave any reason why that was important, and I would refer the court to two cases in which that point is made crystal clear, and those are the cases Thielman and Volker, which are cited in our briefing. And in Thielman and Volker, the court addressed that how in Thielman there were reasons given on the record for why limiting the defendant's access to legal adult materials was necessary, and in Volker showed how the court had not made such findings. And here there are no such findings. Apparently in Thielman, we upheld a condition prohibiting a defendant from viewing writings describing pornography. Right. So that can be done if there are reasons apparent on the record. There are no such reasons in this case, making this case more comparable to Volker, where the court found that such a condition was not appropriate because there were no reasons given on the record. So if the judge says something like, this is important for your rehabilitation, I will therefore prohibit you from, et cetera, et cetera. Right. Or if the judge says, writings were central to your offense, as in Thielman, where the court said adult pornography was a part of, interacting with adults was a part of your offense, so we're going to limit your access to materials that relate to adults. I would also refer the court to the portion of the opinion in Loy where the court said, we don't interpret things into decisions. We don't have probation officers ruling on a case-by-case basis about what things are appropriate, what things are not appropriate. Whatever courts do in other jurisdictions, whatever the Mike Court says about common sense rulings, we don't do that here except in one very limited corner of this jurisprudence, and that's in the associational context because there's such a long history of the First Amendment jurisprudence in that area, the court felt comfortable doing that. But generally, otherwise, we don't assume that anybody's going to read a condition in any way other than the way that condition reads, based on its plain language. And so we would ask the court, respectfully, to find plain error, as the court did in Volcker, and remand for the district court to write a more clear, more narrowly tailored, and more justified in the record condition in this case. Thank you, Ms. Cannon. And Mr. Ivory, thank you very much. Thank you both for well-presented arguments. We'll take the case under advisement. Shall we move on?